IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **RICHARD DAVID WALKER,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:24-CV-402-BJ** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Walker ("Walker") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment.  For reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **REVERSED** and **REMANDED.**

## I.    STATEMENT OF THE CASE

Walker filed this action pursuant to Sections 405(g) and 421(d) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").  Walker protectively applied for DIB on August 16, 2022, alleging he became disabled on March 30, 2019.  (Transcript ("Tr.") at 29; *see* Tr. at 253–56.)  After his application for benefits was denied initially and on reconsideration, Walker requested a hearing before an ALJ.  (Tr. at 29; *see* Tr. at 157–72, 181–84.)  On August 9, 2023, the ALJ held a hearing by telephone.  (Tr. at 29; *see* Tr. at 131–56, 226.)  On November 27, 2023, the ALJ issued an unfavorable opinion.  (Tr. at 26–47.)  Walker then filed a request for review with the Appeals Council.  (Tr. at 251–52.)  On March 8, 2024, the Appeals Council denied Walker's request for review, leaving the ALJ's,

1

November 27, 2023, decision as the final decision of the Commissioner in Walker's case. (Tr. at 1–4.) Walker subsequently filed this civil action seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 421 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. pt. 404. The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, the Commissioner utilizes a sequential, five-step approach. *See* 20 C.F.R. § 404.1520(a)(4). At the first step, the Commissioner determines whether the claimant is engaged in any substantial gainful activity.[1] *See id.* § 404.1520(a)(4)(i). At the second step, the Commissioner determines whether the claimant has an impairment or combination of impairments that are severe. *Id.* § 1520(a)(4)(ii). At the third step, the Commissioner reviews whether the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the impairment of combination of impairments meets or equals an impairment in the Listing, then a disability finding is proper. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d)*.* Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding his physical and mental limitations. *See* 20 C.F.R. § 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *See* 20 C.F.R. § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if

---

[1]"Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See* 20 C.F.R. § 404.1510.

the claimant can still do his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f).  At step

five, the claimant's RFC, age, education, and past work experiences are used to determine whether

the claimant can adjust to other types of work.  *See* 20 C.F.R. § 404.1520(a)(4)(v), (g); *Crowley v.*

*Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

　　At steps one through four, the burden of proof rests upon the claimant to show he is

disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts

to the Commissioner to show that there is other gainful employment the claimant is capable of

performing despite his existing impairments.  *Id.*  If the Commissioner meets his burden, it is up

to the claimant to rebut the Commissioner's findings.  *See Carey v. Apfel*, 230 F.3d 131, 135 (5th

Cir. 2000).

　　In cases such as this one, where substance abuse is involved, SSR 13-2p outlines a detailed

six-step process for evaluating the impact of substance abuse on a disability claim that is in addition

to the above-listed five-step sequential evaluation process.  *See* SSR 13-2p, 2013 WL 621536, at

*5–6 (S.S.A. Feb. 20, 2013).  Where there is "'evidence from medical sources . . . establishing that

[drug/alcohol abuse ("DAA")] is a medically determinable impairment (MDI),' a determination

must first be made as to whether a claimant is disabled considering all MDIs (including DAA)."

*See Ellis v. Saul*, No. 20-329-BAJ-EWD, 2021 WL 4484561, at *5 (M.D. La. Sept. 7, 2021), *report*

*and recommendation adopted*, 2021 WL 4483062 (M.D. La. Sept. 29, 2021) (citing SSR 13-2p,

2013 WL 621536, at *4). If so, the Commissioner "must then determine whether the claimant

would continue to be disabled if he or she stopped using drugs or alcohol; that is . . . [the

Commissioner] will determine whether DAA is 'material' to the finding that the claimant is

disabled."  *See* SSR 13-2p, 2013 WL 621536, at *2.  In other words, the ALJ, in essence, follows

the above-listed, five-step sequential evaluation process considering a claimant's substance abuse.

*Id.* Then the ALJ follows the same five-step, sequential process, except, this time, without considering claimant's substance abuse. *Id.* Where the claimant is found disabled with the substance abuse but not found disabled without substance abuse, then the claimant's substance abuse disorder is deemed to be a material factor to the determination of disability and the claimant is not disabled. *See* 42 U.S.C. § 423(d)(2); *Ellis*, 2021 WL 4484561, at *5.

A court's review of the denial of disability benefits is limited to determining whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choice or medical findings support the decision. *Id.* An ALJ's decision is not subject to reversal, regardless of whether there is substantial evidence in the record that supports the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Myers v. Saul*, No. 20-CV-00445-XR, 2021 WL 4025993 (W.D. Tex. Sept. 3, 2021) (noting that if the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383.

### III.　　ISSUES

In his brief, Walker raises the following issues:

1.　Whether the ALJ failed to properly consider the persuasiveness of the statement by Joshua Terry ("Terry"); and

2.　Whether substantial evidence supports the ALJ's RFC determination.

(Plaintiff's Brief ("Pl.'s Br.") at 1; 5–14.)

### IV.　　ALJ DECISION

#### A.　　<u>Sequential Evaluation Considering Substance Use</u>

On August 16, 2022, Walker protectively filed his application for DIB, alleging that his disability began March 30, 2019. (Tr. at 29.) At Step One, the ALJ found that Walker "did not engage in substantial gainful activity during the period from his alleged onset date of March 30, 2019, through his date last insured of March 31, 2019." (Tr. at 31 (emphasis omitted).) At Step Two, the ALJ found that Walker had the following severe impairments: "history of esophageal stricture and esophagitis, status post multiple esophageal dilations; superior endplate fracturing at T12 of thoracic spine with resultant disc protrusion and mild central stenosis, as well as mild kyphotic deformity at T11–12 with subacute endplate fractures; obstructive sleep apnea; hepatic cirrhosis, secondary to alcohol abuse; chronic post-traumatic stress disorder, major depressive disorder, anxiety disorder, and alcohol dependence." (Tr. at 32 (emphasis omitted).) Next, at Step Three, the ALJ determined that, even with substance use, Walker did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing. (Tr. at 32–34.)

To determine Walker's RFC with substance use, the ALJ considered all of Walker's symptoms, to the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as medical opinions and prior

administrative medical findings. (Tr. at 34.) After reviewing the record, the ALJ determined Walker had the following RFC with substance use:

> [Walker was able to] perform the light work as defined in 20 CFR [§] 404.1567(b) as follows: He was able to lift and carry 10 pounds frequently and 20 pounds occasionally. He was able to stand and walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday. He could perform simple job tasks (defined as routine, repetitive tasks little variation in duties and involving simple judgment-making). He could have no public contact and occasional interaction with coworkers and supervisors. He would have absences of more than 2 days a month.

(Tr. at 34 (emphasis omitted).) At Step Four, the ALJ found that Walker could no longer perform any past relevant work because the requirements exceeded Walker's RFC. (Tr. at 38–39; 35.) At Step Five, the ALJ concluded that there were no jobs that existed in significant numbers in the national economy that Walker could perform. (Tr. at 39–40.) Thus, the ALJ determined Walker, when considering the substance use disorder, was disabled. (Tr. at 39–40.)

### B.    Sequential Evaluation Without Considering Substance Use

Having concluded Walker was disabled when considering his substance use disorder, the ALJ next analyzed whether Walker was disabled without considering his substance use. Steps One through Three remained unchanged. (*See* Tr. at 40–42.) In determining Walker's RFC without substance use, however, the ALJ determined the following:

> [I]f the claimant stopped the substance use, the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR [§] 404.1567(b) as follows: He was able to lift and carry 10 pounds frequently and 20 pounds occasionally. He was able to stand and walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday. He could perform detailed but not complex job tasks. He could have no public contact and occasional interaction with coworkers and supervisors.

(Tr. at 42 (emphasis omitted).) At Step Four, the ALJ found that Walker could no longer perform any past relevant work because the requirements exceeded Walker's RFC. (Tr. at 45). At Step Five, without substance use, and based upon the RFC determination and the testimony of a

vocational expert ("VE"), the ALJ concluded that there were jobs—light cleaner, sorter, or small item packager—that existed in significant numbers in the national economy that Walker could perform.  (Tr. at 46.)  Accordingly, the ALJ concluded:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 404.1535).  Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. at 47 (emphasis omitted).)

## V.     DISCUSSION

### A.     The ALJ Properly Considered the Persuasiveness of Joshua Terry's Testimony

In his brief, Walker first argues that the ALJ erred in discounting the testimony of Terry, Walker's friend of eight years.  (Pl.'s Br. at 13.)  Walker claims that "[t]here is simply no evidence to support the ALJ's finding that Terry's statement is persuasive when Plaintiff is using alcohol but not persuasive when [] Terry [sic] has relapses of alcohol use."  (Pl.'s Br. at 13.)  In response, the Commissioner argues there is substantial evidence that the ALJ properly considered the testimony of Terry and the persuasiveness of his statements therein.  (Defendant's Brief ("Def.'s Br.") at 3.)

When considering Terry's statements in tandem with Walker's substance use, the ALJ noted that his "allegations of limitations largely mirror those of the claimant, and that including substance use, they are generally consistent with or supported by the totality of evidence."  (Tr. at 38.)  Accordingly, the ALJ found them generally persuasive.  (Tr. at 38.)  When the ALJ considered Terry's statements without Walker's substance use, however, the ALJ found that his statements were "not wholly consistent with or supported by the totality of the evidence, as detailed fully above, and therefore, [he] did not find them fully persuasive."  (Tr. at 45.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to product the claimant's pain or other symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Once the impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do work activities. *See* 20 C.F.R. § 1529(c); SSR 16-3p, 2017 WL 5180304, at *3. The ALJ may consider evidence from "[o]ther sources," like friends, in "assessing the intensity, persistence, and limiting effects of symptoms." *See* SSR 16-3P, 2017 WL 5180304, at *7. Information from these sources, however, is considered "in terms of how consistent those observations are with the individual's statements about his . . . symptoms as well as with all of the evidence in the file." *Id.*

Contrary to Walker's claim, the ALJ did make a proper determination as to the persuasiveness of Terry's statements. In his decision, the ALJ considered how consistent Terry's statements were with the totality of the evidence. (Tr. 38, 45.) While the ALJ found that Terry's statements were "generally consistent with or supported by the totality of evidence" when considering Walker's substance use, the ALJ found that the statements from Terry were "not wholly consistent with or supported by the totality of evidence" if substance use stopped. (Tr. at 38, 45.) The ALJ specifically discussed how Terry's subjective statements regarding the intensity, persistence, and limiting effects of Walker's symptoms—in the absence of substance use—were not fully persuasive because the statements largely mirrored those of Walker. (Tr. at 45.) Nonetheless, neither the statements of Terry nor Walker could be supported by the record as a whole. Because the ALJ adequately and thoroughly explained the persuasiveness or lack thereof that he assigned to Terry's statements, the Court concludes that the ALJ did not err in evaluating and discounting such statements.

B.    <u>**The ALJ's RFC Determination Is Not Supported by Substantial Evidence**</u>

In his brief, Walker further argues, in essence, that the ALJ erred by improperly substituting his own opinion in making the RFC determination for that of the medical opinion evidence of record.[2] (Pl.'s Br. at 6–14.)  Specifically, Walker states:

> Importantly, there is no medical opinion of record that supports the ALJ's finding that, but for alcohol use, [Walker] would not require as many absences for mental health treatment. . . .

> State agency consultants opine that there is insufficient evidence to determine Plaintiff's disability status before his date last insured.  (Tr. 45).  However, instead of obtaining medical expert testimony or a consultative evaluation regarding [Walker]'s likely extent of required treatment before [Walker]'s date last insured, the ALJ simply finds the State physicians' opinions are not fully persuasive.  (Tr. 45).  The ALJ explains that he finds the State agency [medical] consultant's [("SAMCs")] opinions are not persuasive based on "additional evidence received at hearing level (including testimony), and this evidence is compelling."  (Tr. 45).  However, the ALJ does not explain what testimony or additional evidence he finds supports a finding that [Walker] no longer requires multiple absences from work per month for mental health treatment when [Walker] is not using alcohol.

(Pl.'s Br. at 12.)

### 1.    **Improper Substitution of Lay Opinion for Medical Opinion**

As set forth above, the ALJ determined that Walker, if he stopped the substance abuse, had the RFC to perform light work limited to the following restrictions: (1) lift and carry 10 pounds frequently and 20 pounds occasionally; (2) stand and walk for 6 hours in an 8-hour day and sit for 6 hours in an 8-hour workday; (3) perform detailed but not complex job tasks; and (4) have no public contact and only occasional interaction with coworkers and supervisors.[3]  (Tr. at 42.)

---

[2] The Court interprets this to be Walker's argument as his brief is not entirely clear.  While Walker never once cited to *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the Commissioner's brief responds to Walker's brief as though it were a *Ripley* challenge.  (Def.'s Br. at 5–6.)

[3] Walker only challenges the ALJ's RFC determination without substance use.  Thus, the Court limits its inquiry to the RFC determination that does not include the need to miss more than two days of work a month.

In making this RFC determination, the ALJ considered Walker's allegations of disability due to his combination of mental and physical impairments, including PTSD, anxiety, depression, traumatic brain injury, esophageal issues, spine and back issues, and sleep apnea. (Tr. at 43–44.) Additionally, he considered Walker's testimony that he is no longer self-medicating on alcohol, although he continues to be out of work. (Tr. at 44) The ALJ further considered Walker's testimony that he was doing okay in his online classes at Tarrant County, he leaves the house to attend group meetings and his VA appointments, he goes grocery shopping, and his frequent mental health appointments make it difficult to maintain full-time employment. (Tr. at 44) The ALJ also considered Terry's statements. (Tr. at 45; *see, e.g.,* Tr. at 324–31.)

When considering Walker's physical impairments, the ALJ also considered Walker's medical records spanning multiple years. (Tr. at 43–45.) Although Walker complained of pain and discomfort caused by his impairments, the ALJ noted that the progress notes generally showed steady gait, normal strength in all extremities, good muscle tone, good coordination, good sensation, cranial nerves within normal limits, no focal neurological deficits, and negative straight leg raise. (Tr. at 43; *see, e.g.,* Tr. at 695, 707, 856, 907, 977–78, 1269.) Further, the ALJ noted that the record lacked any indication that Walker did not maintain normal manipulative abilities and neurological function, nor was there any indication that he had any disabling limitations with regard to grasping, handling, feeling, and fingering objects. (Tr. at 43.)

When considering Walker's mental functioning and interaction with people, the ALJ noted that Walker was able to follow instructions from healthcare providers, comply with treatment outside the doctor's office, respond to questions from medical providers, and was doing okay in school. (Tr. at 44.) The ALJ further mentioned that the medical record lacked any mention of significant learning barriers, issues with cognition or memory, and significantly impaired

concentration or distractibility. (Tr. at 44.) In addition to these medical records, the ALJ cited to reports noting how Walker had no problems with grooming and hygiene, getting along with staff, or his temper during treatment visits. (Tr. at 44; *see, e.g.,* Tr. at 1067, 1386, 1477, 1569, 2028, 2703, 3459, 4399, 4501, 4519.)

The determination of a plaintiff's RFC is "the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 603–04 (5th Cir. 2012). The ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinion(s) or prior administrative medical finding(s)," including those from medical sources. *Mary L. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-1430-BK, 2024 WL 3939571, at *4 (N.D. Tex. Aug. 26, 2024) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). However, in *Ripley*, the Fifth Circuit held that remand for additional proceedings is necessary where the "record includes a vast amount of medical evidence establishing" that the claimant has an impairment but "does not clearly establish . . . the effect [the claimant's] condition had on his ability to work." 67 F.3d at 557. An ALJ, however, "may not—without the opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (6th Cir. 2009). Where the record lacks medical opinions regarding how a claimant's impairments impact his ability to work, the ALJ might end up improperly relying on his own medical opinion in developing the claimant's RFC. *See Graves v. Kijakazi*, No. 3:22-CV-0107-L-BH, 2023 WL 2025247, at *16 (N.D. Tex. Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2025052 (N.D. Tex. Feb. 15, 2023). This is something the ALJ is ill-equipped to do. *See Bowles v. Comm'r of Soc. Sec. Admin.*, No. 7:20-CV-00112-O-BP, 2021 WL 7451148, at *2–5 (N.D. Tex. Oct. 19, 2021)

(stating that, where raw medical data may support an RFC determination, it is of no substitute for a medical opinion as ALJs are unable to interpret raw medical data), *report and recommendation adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022); *see also Lozano v. Comm'r, Soc. Sec. Admin.*, No. 4:21-CV-1365-P, 2023 WL 2618132, at *5 (N.D. Tex. Mar. 2, 2023) (finding that, where the ALJ implicitly rejects the medical opinions of record and establishes a more restrictive limitation, the RFC determination is not supported by substantial evidence), *report and recommendation adopted*, 2023 WL 2619311 (N.D. Tex. Mar. 23, 2023).

Here, it appears that the ALJ was playing the role of doctor.  Though the ALJ carefully considered the entire record by reviewing all symptoms, to the extent the symptoms were consistent with objective medical and other evidence, education records, medical opinions, and prior administrative medical findings, there are no medical opinions of record regarding the effects of Walker's physical or mental impairments on his ability to work. By the ALJ's own admission, the SAMCs at the initial and reconsideration level acknowledged that there was insufficient evidence to determine the disability status of Walker and that no physical or mental RFC assessments had been done regarding the impact of Walker's impairments on his ability to work. *See Graves*, 2023 WL 2025247, at *16 (holding that the ALJ improperly relied on his own interpretation of the medical and other evidence by not explaining how he determined the RFC, where there were no medical opinions in the record regarding the effects of plaintiff's impairments on his or her ability to work).  Instead, it appears that the ALJ interpreted Walker's raw medical data to support the limitations by citing to various progress notes—none of which address Walker's work limitations.  *See Williams*, 355 F. App'x at 831–32 (holding that where the ALJ relies upon his own medical opinion to interpret raw medical data the RFC determination is not supported by substantial evidence; *Thornhill v. Colvin*, No. 3:14-CV-335-M, 2015 WL 232844, at *10 (N.D.

Tex. Jan. 16, 2015) (finding that where the ALJ relies on progress notes that do not themselves address plaintiff's work limitations the record lacks substantial evidence to support the RFC determination).  By relying on the progress notes, the ALJ was playing the role of doctor.  *See Lozano*, 2023 WL 2618132, at *5 (citing *Bowles*, 2021 WL 7451148, at *2–5).  Therefore, without any such evidence in the record that clearly establishes the effects of the claimant's impairments on his ability to work, the ALJ's RFC determination is not supported by substantial evidence.  *See El Neil v. Comm'r of Soc. Sec. Admin.*, No. 4:23-CV-00473-BP, 2024 WL 265870, at *14–15 (N.D. Tex. Jan. 24, 2024) (stating that even where the ALJ cites to many medical reports, treatment records, progress notes, etc., where the documents do not clearly establish the impact of claimant's impairments on his or her ability to work the RFC is not supported by substantial evidence); *Wanda K.W. v. Comm'r of Soc. Sec. Admin.*, No. 3:23-CV-200-S-BK, 2024 WL 1078300, at *9–10 (N.D. Tex. Feb. 22, 2024), *report and recommendation adopted*, 2024 WL 1078242 (N.D. Tex. Mar. 11, 2024) (holding that where the ALJ was left with evidence that merely describes plaintiff's medical conditions the ALJ's RFC determination is not supported by substantial evidence).

### 2.    Harmless Error

The final issue is whether the ALJ's error is a harmless error.  "Procedural perfection in administrative proceedings is not required," thus, a court "will not vacate a judgment unless the substantial rights of a party have been affected."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).  Therefore, for remand to be required, Walker must show that he was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing his RFC.  *See id.* To establish prejudice, he must show that the ALJ's failure to rely on a medical opinion as to the effects that his impairments had on his ability to work casts doubt onto the existence of substantial evidence supporting the disability determination.  *See McNair v. Comm'r of Soc. Sec. Admin.*, 537

F. Supp. 2d 823, 837 (N.D. Tex. Mar. 6, 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

Contrary to the Commissioner's contentions, the ALJ's failure to rely on a medical opinion regarding Plaintiff's physical and mental RFC determination casts doubts as to whether substantial evidence exists to support the finding that he is not disabled. *See Thornhill*, 2015 WL 232844, at *11 (finding prejudice "where the ALJ could have obtained evidence that might have changed the result—specifically a medical source statement"); *Laws v. Colvin*, No 3:14-CV-3683-B, 2016 WL 1170826 (N.D. Tex. Mar. 25, 2016) (reversing and remanding for further proceedings for lack of substantial evidence because the ALJ failed to rely on a medical opinion in determining plaintiff's RFC). Accordingly, the error is not harmless, and remand is required on this issue.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this order.

SIGNED April 7, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE